# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

NAVAJO NATION GAMING
ENTERPRISE,

      Plaintiff,

v.

TWIN ARROW, L.L.C., TWIN
ARROW BINGO SUPPLY, L.L.C.,
ROBERT BENARD and PAMELA
BENARD,

      Defendants.

Case No. _____

---

## COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, CYBERSQUATTING, COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff Navajo Nation Gaming Enterprise alleges the following:

1. Plaintiff Navajo Nation Gaming Enterprise is a wholly owned tribal enterprise organized under the laws of the Navajo Nation, a federally recognized Indian Tribe, with a principal place of business at 249 East New Mexico 118 State Highway, Church Rock, New Mexico 87311.

2. Defendants Twin Arrow, L.L.C. and Twin Arrow Bingo Supply, L.L.C. are New Mexico limited liability companies with a principal place of

business at 320 W. 21st Street, Clovis, New Mexico 88101, and a mailing address at P.O. Box 5477, Clovis, New Mexico 88102.

3. Defendant Robert "Rocky" Benard is a New Mexico resident with an address at 871 SR 77, Clovis, New Mexico 88101.

4. Robert Benard is the sole organizer and officer of defendants Twin Arrow, L.L.C. and Twin Arrow Bingo Supply, L.L.C.

5. Upon information and belief, Robert Benard has personally directed the infringing activities that are the subject of this Complaint. Robert Benard is the individual registrant of the domain name <TwinArrowBingo.com> and the individual applicant for U.S. trademark application serial no. 86/706043 for the mark TWIN ARROW BINGO.

6. Upon information and belief, Pamela Benard is the wife of Robert Benard. She is included as a defendant in this matter because at all material times Robert Benard was acting on behalf and for the benefit of the marital community. Further, on information and belief, Pamela Benard has personally directed and/or participated in the infringing activities that are the subject of this Complaint. Thus, any monetary award should be rendered and enforceable against the Benards' marital community.

7.     Collectively, Twin Arrow, L.L.C., Twin Arrow Bingo Supply, L.L.C., Robert Benard and Pamela Benard are hereafter referred to as "Defendants."

8.     This action arises from Defendants' wanton and knowing infringement of the Navajo Nation Gaming Enterprise's federally registered and common law trademarks and actions by the Defendants that are likely to cause confusion as to whether the parties are associated with one another, when in fact they are not.

9.     This Court has in personam jurisdiction over the Defendants and jurisdiction over the subject matter pursuant to 28 U.S.C. § 1338(a) and (b), and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the state law claims as provided by 28 U.S.C. § 1367.

10.     Venue properly lies in this judicial district under 28 U.S.C. § 1391(b) and (c).

## GENERAL FACTUAL ALLEGATIONS

11.     The Navajo Nation is a federally recognized Indian tribe, comprising over 330,000 members, and occupying approximately 27,000 square miles of Indian lands located within the boundaries of the States of Arizona, New Mexico and Utah. The Navajo land base is slightly larger than the State of West Virginia.

12.     The Navajo Nation is a tribal government, comprising a central

government with an Executive, Legislative, and Judicial Branch; comprising 110 local governments (known as "chapters"), a township; and over 20 various business-type entities, including the Plaintiff, Navajo Nation Gaming Enterprise.

13.     On September 26, 2006, the Navajo Nation Council (the governing body of the Navajo Nation), pursuant to Navajo Nation Council Resolution No. CS-34-06, codified in Title 5 of the Navajo Nation Code, Sections 1701 *et seq*., established the "Navajo Nation Gaming Enterprise," as tribal gaming enterprise to develop and operate Navajo gaming facilities. The Navajo Nation Gaming Enterprise was created and tribally chartered by the Navajo Nation and is wholly-owned by the Navajo Nation.

14.     The Navajo Nation Gaming Enterprise ("NNGE") was created to conduct tribal gaming operations within the Navajo Nation under the auspices of the Indian Gaming Regulatory Act of 1988 (Public Law 100-497, 25 U.S.C. §§ 2701-2721 and 18 U.S.C. §§ 1166-1168), the Navajo Gaming Ordinance, (5 N.N.C. § 2001 *et seq*.) and the gaming compacts entered into between the Navajo Nation and any State (presently Arizona and New Mexico); and to generate gaming revenues and provide a fair return to the Navajo Nation in accordance with the Indian Gaming Regulatory Act, Navajo Gaming Ordinance, and other applicable laws of the Navajo Nation. 5 N.N.C. § 1703.

15.     Since 2006, NNGE has created more than 1,400 jobs in New Mexico and Arizona, with a dedicated focus on hiring and training members of the Navajo Nation. NNGE has distributed millions of dollars in revenue back to the Navajo Nation and the state governments of Arizona and New Mexico.

16.     NNGE plays a critical and visible role in the development and economic success of the Navajo Nation.

17.     NNGE operates the Flowing Water Navajo Casino, Northern Edge Navajo Casino and Fire Rock Navajo Casino within the New Mexico portion of the Navajo Nation, as well as the Twin Arrows Navajo Casino Resort within the Arizona portion of the Navajo Nation, near Flagstaff, Arizona.

18.     NNGE opened the Twin Arrows Navajo Casino Resort to much fanfare and publicity on Memorial Day Weekend 2013.

19.     The construction of the Twin Arrows Navajo Casino Resort and NNGE's adoption of the name and mark TWIN ARROWS NAVAJO CASINO RESORT® received significant news coverage in New Mexico, dating back to at least December 2010.

20.     NNGE owns four federal trademark registrations (Reg. Nos. 4514922, 4491427, 4605726 and 4605727) for the word mark TWIN ARROWS NAVAJO

CASINO RESORT®. The filing date for the TWIN ARROWS NAVAJO CASINO RESORT® applications is November 9, 2010.

21.    NNGE also owns three federal trademark registrations (Reg. Nos. 4735542, 4491566 and 4515067) for this TWIN ARROWS NAVAJO CASINO RESORT and Design mark:



The filing date for the TWIN ARROWS NAVAJO CASINO RESORT and Design applications is October 28, 2011.

22.    Pursuant to 15 U.S.C. § 1057(c), NNGE's exclusive nationwide rights in the TWIN ARROWS NAVAJO CASINO RESORT® and TWIN ARROWS NAVAJO CASINO RESORT and Design marks (the "Registered Marks") date back to November 9, 2010 and October 28, 2011, respectively.

23.    NNGE's registrations for the Registered Marks are for, among other goods and services, gaming, entertainment and hospitality services, including bar and restaurant services, retail gift store services, hotel services, providing entertainment facilities, providing casinos and gaming facilities, providing a casino

players rewards program, conducting live poker games and tournaments, conducting slot machine tournaments, and conducting bingo tournaments.

24. NNGE also owns two pending federal applications (Ser. Nos. 86/785343 and 86/785348) for the word mark TWIN ARROWS CASINO RESORT™, and two pending applications (Ser. Nos. 86/785361 and 86/785378) for this TWIN ARROWS CASINO RESORT and Design mark:



The applications were filed October 12, 2015. NNGE has used the TWIN ARROWS CASINO RESORT™ marks since at least as early as July 2014.

25. NNGE also uses a number of other TWIN ARROWS™ marks for its gaming, entertainment and hospitality services, including TWIN ARROWS™, TWIN ARROWS CASINO™ and TWIN ARROWS BINGO™.

26. Collectively, NNGE's family of TWIN ARROWS™ marks, including the Registered Marks, TWIN ARROWS CASINO RESORT™, TWIN ARROWS™, TWIN ARROWS CASINO™ and TWIN ARROWS BINGO™, are hereafter referred to as the "TWIN ARROWS Marks."

27.     NNGE owns and operates the official website for the Twin Arrows Casino Resort at <TwinArrows.com>. Below is a screenshot of the homepage.



28.     NNGE has offered bingo at its Twin Arrows Casino Resort since May 1, 2014. NNGE promotes its bingo services at the Twin Arrows Casino Resort at <TwinArrows.com/Bingo>. NNGE uses the following logo in connection with its bingo services:



29.    The Twin Arrows Casino Resort has received numerous national accolades and awards, including AAA's *Four Diamond Award* and TripAdvisor's *Certificate of Excellence*.

30.    NNGE has built strong consumer recognition and invaluable goodwill in the TWIN ARROWS Marks through its prominent use of the marks for its gaming and hospitality services throughout New Mexico, the Southwest and the United States.

31.    According to corporate records from the New Mexico Secretary of State database, Defendant Twin Arrow, L.L.C. was formed on April 23, 2013 as Twin Arrow Bingo, L.L.C. Twin Arrow Bingo, L.L.C. changed its corporate name to Twin Arrow, L.L.C. on July 14, 2014. Defendant Twin Arrow Bingo Supply, L.L.C. was formed on October 31, 2014.

32.    In June 2015, NNGE was alerted to Defendants' plans to open a gaming and entertainment facility in Clovis, New Mexico under the name and mark TWIN ARROW CASINO.

33.    NNGE's subsequent investigation identified Defendants' domain name at <twinarrowbingo.com> (the "Domain Name"). Defendant Robert Benard registered the Domain Name on March 11, 2013.

34.    At some point in 2015, Defendants launched a website at the Domain Name (the "Website"), promoting their planned gaming facility in Clovis, New Mexico using the names and marks TWIN ARROW, TWIN ARROW BINGO, TWIN ARROW CASINO, TWIN ARROW BINGO & CASINO and TWIN ARROW FAMILY FUN (the "Infringing Marks").

35.    The following is a screenshot of the Website's homepage on August 26, 2015.



36.    The design of the Website copies the look and feel of NNGE's official website at <TwinArrows.com>, including the overall layout, the font, and the featured image of a celebrating female slots player with an overlay banner.

37.     NNGE's outside counsel sent a cease and desist letter to Defendants on July 22, 2015 demanding that Defendants cease using any names or marks containing TWIN ARROW or TWIN ARROWS.

38.     On August 6 defendant Robert Benard called NNGE's outside counsel in response to the letter. Benard expressed some willingness to change the name and said he would furnish a written response to the letter by August 14.

39.     NNGE's outside counsel followed up with Benard throughout August, September and October. Benard was unresponsive.

40.     NNGE later found out that Benard had filed a federal trademark application dated July 27 for the mark TWIN ARROW BINGO for "bingo parlor services," Ser. No. 86/706043 (the "Application"), mere hours or days after receiving notice of NNGE's rights in the TWIN ARROWS Marks.

41.     In November the Application was refused registration by the U.S. Patent and Trademark Office (USPTO) <u>based on a likelihood of confusion with NNGE's Registered Marks</u>. Benard has not responded to the refusal and it apparently did not sway him from proceeding with use of the Infringing Marks.

42.     On December 1 NNGE's outside counsel sent Defendants another cease and desist letter, with a version of this Complaint attached.

43.   Defendants then retained counsel, who confirmed to NNGE's outside counsel that Defendants' planned gaming facility was not yet open for business.

44.   Throughout December, January and February, NNGE's outside counsel was engaged in settlement negotiations with Defendants' counsel.

45.   Defendants took down the Website in January or February 2016. NNGE mistook this as a gesture of good faith in the continuing settlement negotiations. The negotiations progressed to the point where NNGE presented a formal settlement agreement to Defendants in early March 2016.

46.   Defendants never furnished a response to the proposed settlement agreement.

47.   Defendants' TWIN ARROW gaming and entertainment facility opened for business on March 25, 2016.

48.   Below is an image of the outside of Defendant's TWIN ARROW facility, published in a March 14, 2016 online article by the *Clovis News Journal*.



49.     On information and belief, Defendants never intended to stop using the Infringing Marks. Defendants' underhanded ruse wasted NNGE's good faith investment in months of settlement negotiations with Defendants.

50.     The most prominent element of each of the Infringing Marks is TWIN ARROW. The most prominent element of each of the TWIN ARROWS Marks is TWIN ARROWS. The Infringing Marks are strikingly similar, and in some cases essentially identical, to NNGE's TWIN ARROWS Marks.

51.     Moreover, with the opening of Defendants' facility, Defendants furthered their blatant attempt to trade off the TWIN ARROWS Marks by imitating the arrow iconography and font of NNGE's trademarks and trade dress.

 

52.     Below are images of the interior of Defendant's TWIN ARROW gaming operation published to the Clovis Chamber of Commerce's Facebook page on April 8, 2016.

 

 

53.     Defendants use the Infringing Marks in connection with gaming, entertainment services, retail gift store services, providing entertainment facilities, providing casinos and gaming facilities, and conducting bingo tournaments. On information and belief, Defendants also use the Infringing Marks for restaurant services.  Defendants use the Infringing Marks for services that are identical or, at a minimum, commercially related to the services covered by NNGE's registrations for the Registered Marks and the services with which NNGE uses its TWIN ARROWS Marks.

55.     Defendants are not part of, nor are they an affiliate of, NNGE.

56.     NNGE has not authorized the adoption or use of the Infringing Marks by Defendants. To the contrary, upon learning of Defendants' intended use of the Infringing Marks, NNGE has consistently and repeatedly voiced its objections to the Infringing Marks and demanded that Defendants change to different names and marks that would not be likely to cause confusion as to the source or affiliation of Defendants' services.

57.     Defendant Robert Benard's federal application for the mark TWIN ARROW BINGO claims a first use in commerce date of March 1, 2013. Benard did not use the mark TWIN ARROW BINGO in commerce for bingo parlor services until March 2016.

58.     On information and belief, the claimed date of first use in the Application is intentionally false.

59.     Further, despite receiving notice of NNGE's rights in the TWIN ARROWS Marks just hours or days earlier, defendant Robert Benard signed a supporting declaration for the Application that stated, among other things:

> The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods and/or services of such other person, to cause confusion or mistake, or to deceive.

60.    Willful false statements in connection with the Application are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001.

61.    Instead of respecting NNGE's rights in the TWIN ARROWS Marks and changing the name of their planned facility, which was more than eight-months away from opening, Defendants filed a federal application containing willful false statements, then engaged in an ill-conceived pattern of feigned cooperation and unresponsiveness to NNGE's rightful demands.

62.    Upon information and belief, Defendants developed the Infringing Marks with the intent to capitalize on NNGE's TWIN ARROWS Marks and to portray themselves and their services as being affiliated with and/or endorsed by NNGE, when in fact they are not.

63.    NNGE has received evidence of actual confusion between Defendants and NNGE caused by Defendants' use of the Infringing Marks.

64.    NNGE has been damaged and will continue to suffer irreparable harm unless the use of the Infringing Marks by Defendants is permanently enjoined.

## COUNT I - TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114

65.    The allegations of Paragraphs 1 through 64 above are incorporated into this Count I by reference as if fully set forth.

66.    The Registered Marks were adopted, used and federally registered by NNGE prior to Defendants' first use of the Infringing Marks. NNGE's exclusive and nationwide rights in the Registered Marks were well-established prior to Twin Arrow, L.L.C. and Twin Arrow Bingo Supply, L.L.C even being formed as entities.

67.    The Defendants' unauthorized use of the Infringing Marks in interstate commerce without the authorization or consent of NNGE constitutes trademark infringement in violation of 15 U.S.C. § 1114(1) in that such use is likely to cause, and has actually caused, the consuming public to be confused, mistaken or deceived as to the source of Defendants' services and whether Defendants are associated, affiliated, or connected with NNGE, which they are not.

68.    NNGE has suffered damage by reason of the infringing activities outlined in this Complaint, and it will suffer irreparable harm unless the continued use and attempted registration of the Infringing Marks is permanently enjoined.

69.    Upon information and belief, Defendants' conduct as outlined in this Count I was engaged in with an intent to infringe or, at a minimum, with a willful disregard for, NNGE's rights in the Registered Marks, so as to justify an award of exemplary damages and attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT II - FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. §1125(a)

70.     The allegations of Paragraphs 1 through 69 above are incorporated into this Count II by reference as if fully set forth.

71.     By virtue of its prevalent use and promotion of the TWIN ARROWS Marks, NNGE established valuable goodwill in its TWIN ARROWS Marks prior to the adoption and use of the Infringing Marks by Defendants.

72.     The Infringing Marks are confusingly similar to the TWIN ARROWS Marks.

73.     NNGE has been damaged by reason of the infringing activities outlined in this Complaint, and it will suffer irreparable harm unless the continued use and attempted registration of the Infringing Marks is permanently enjoined.

74.     Upon information and belief, the conduct of Defendants as outlined in this Count II was engaged in with intent to cause confusion with NNGE's TWIN ARROWS Marks or, at a minimum, with a willful disregard for NNGE's rights in the marks, so as to justify an award of exemplary damages and attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT III - CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)

75.     The allegations of Paragraphs 1 through 74 above are incorporated into this Count III by reference as if fully set forth.

76.    NNGE's exclusive and nationwide rights in the Registered Marks were established prior to Defendants' registration of the Domain Name.

77.    The TWIN ARROWS Marks were distinctive at the time of registration of the Domain Name, as evidenced by registration of the Registered Marks on the Principal Register of the U.S. Patent and Trademark Office.

78.    The Domain Name is confusingly similar to the TWIN ARROWS Marks, including the Registered Marks. Upon information and belief, Defendant Benard had knowledge of one or more of the TWIN ARROWS Marks, including the Registered Marks, when he first registered the Domain Name.

79.    Given the significant publicity, including in New Mexico, for NNGE's Twin Arrows Casino Resort prior to registration of the Domain Name, Defendants' bad faith intent to capitalize on NNGE's TWIN ARROWS Marks through registration and use of the Domain Name is evident.

80.    NNGE has been damaged by reason of the cyberpiracy and infringing activities outlined in this Complaint, and it will suffer irreparable harm unless the Domain Name is transferred to NNGE and the Defendants are permanently enjoined from the registration of domain names confusingly similar to the TWIN ARROWS Marks.

81.     Upon information and belief, the conduct of Defendants as outlined in this Count III was engaged in with intent to cause confusion with NNGE's TWIN ARROWS Marks or, at a minimum, with a willful disregard for NNGE's rights in the marks, so as to justify an award of attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

82.     The allegations of Paragraphs 1 through 81 above are incorporated into this Count IV by reference as if fully set forth.

83.     By virtue of its prevalent use and promotion, NNGE established valuable goodwill in its TWIN ARROWS Marks as used in connection with gaming, retail, hospitality and entertainment services throughout the U.S., including throughout the State of New Mexico, prior to the adoption and use of the Infringing Marks by Defendants.

84.     Defendants' adoption, attempted registration and use of the Infringing Marks in connection with their services is likely to deceive, confuse and mislead consumers and the general public into believing that Defendants and their services emanate from, are authorized by, and/or are in some manner affiliated with or endorsed by NNGE, when they are not.

85.   NNGE has been damaged by reason of the infringing activities outlined in this Complaint, and it will suffer irreparable harm unless the continued use of the Infringing Marks is permanently enjoined.

86.   Upon information and belief, Defendants' conduct as outlined in this Count IV has been engaged in with a willful, wanton or reckless disregard for NNGE's rights, so as to justify an award of punitive damages.

## COUNT V - COMMON LAW UNFAIR COMPETITION

87.   The allegations of Paragraphs 1 through 86 above are incorporated into this Count V by reference as if fully set forth.

88.   The use by Defendants of the Infringing Marks constitutes unfair competition under New Mexico law.

89.   NNGE has been damaged by reason of the unfair competition as outlined in this Complaint, and it will suffer irreparable harm unless the unfair competition is permanently enjoined.

90.   Upon information and belief, Defendants' conduct as outlined herein has been engaged in with a willful, wanton or reckless disregard for NNGE's rights, so as to justify an award of punitive damages.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief:

A.    A permanent injunction prohibiting Defendants and all those acting in concert with Defendants from using the Infringing Marks or any other name or mark likely to be confused with the TWIN ARROWS Marks;

B.    A permanent injunction prohibiting Defendants and all those acting in concert with Defendants from using the Infringing Marks or any other name or mark that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with NNGE, or as to the origin, sponsorship, or approval of Defendants' goods, services and/or commercial activities by NNGE;

C.    An Order directing Defendants to expressly abandon U.S. application serial no. 86/706043, or to surrender a registration that matures from the Application during the pendency of this proceeding, and enjoining Defendants from seeking to register any name or mark likely to be confused with the TWIN ARROWS Marks, or otherwise likely to cause confusion to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with NNGE, or as to the

origin, sponsorship, or approval of Defendants' goods, services and/or commercial activities by NNGE;

D.   An Order directing Defendants to change the corporate names Twin Arrow, L.L.C. and Twin Arrow Bingo Supply, L.L.C. to names that are not likely to be confused with the TWIN ARROWS Marks, or otherwise likely to cause confusion to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with NNGE, or as to the origin, sponsorship, or approval of Defendants' goods, services and/or commercial activities by NNGE, and enjoining Defendants from forming any entity with a name likely to be confused with the TWIN ARROWS Marks, or otherwise likely to cause confusion to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with NNGE, or as to the origin, sponsorship, or approval of Defendants' goods, services and/or commercial activities by NNGE;

E.   An Order directing transfer of the Domain Name to NNGE;

F.   An award of compensatory damages under each and every one of Counts I, II, IV and V;

G.   A statutory damages award of $100,000 under Count III, pursuant to 15 U.S.C. § 1117(d).

H.   An accounting and disgorgement of profits derived by Defendants under the Infringing Marks;

I.   An award of exemplary damages pursuant to 15 U.S.C. § 1117(a) under Counts I and II;

J.   An award of punitive damages under Counts IV and V;

K.   An award of attorneys' fees pursuant to 15 U.S.C. §1117(a) under Counts I, II and III;

L.   An award of taxable costs;

M.   Destruction of all of Defendants' infringing articles, signage and promotional materials bearing the Infringing Marks; and

Such other relief as this Court deems appropriate.

DATED:   May 9, 2016

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By:  _/s/ Dennis E. Jontz_____
     Dennis E. Jontz
     Ryan M. Walters
     *Attorneys for Plaintiff*
     201 Third Street NW, Suite 1950
     Albuquerque, New Mexico 87102
     Phone:  (505) 764-5400
     Fax:  (505) 764-5467
     djontz@lrrc.com
     rwalters@lrrc.com